Julia A. MENNEMEYER (Now Couch), Appellant,

v.

Gary MENNEMEYER, Appellee.

No. 92–CA–3080–S.

Court of Appeals of Kentucky.

May 27, 1994.

Discretionary Review Denied and Case Ordered Published by Supreme Court Nov. 16, 1994.

Phyllis K. Lonneman, Elizabethtown, for appellant.

Ted W. Spiegel, Louisville, for appellee.

Before COMBS, GUDGEL and HOWERTON, JJ.

*OPINION*

GUDGEL, Judge:

This is an appeal from an order entered by the Hardin Circuit Court in a post-dissolution proceeding involving a motion to modify an award of joint custody. Appellant mother contends that the trial court erred by ordering the joint custody decree to continue while simultaneously ordering a switch in physical custody from appellant to appellee father. Appellant also *complains about there being* an excessive time delay between the first of the commissioner's two hearings and his final

recommendation. For the reasons stated hereafter, we affirm in part, and reverse and remand in part.

The parties divorced in Indiana in 1983, when their daughter was two years old. They agreed at that time to share joint custody, with appellant being designated to have physical custody of the child.

In 1991, appellee filed a motion seeking an order modifying the joint custody decree to award him sole custody on the ground that appellant intended to relocate to Florida for employment purposes. According to appellee, the move would render joint custody "intolerable" and, therefore, the child's best interest would be served by an award of sole custody.

A domestic relations commissioner conducted a hearing on the motion on October 9, 1991, and filed a report on January 7, 1992. Shortly before that report was filed, however, appellee filed a motion seeking leave to reopen the hearing for the purpose of presenting additional testimony. The motion was granted and a second hearing was conducted on February 12, 1992, by which time appellant and the child had moved back to Kentucky from Florida. On November 10 the commissioner filed a second report which simultaneously recommended the continuance of joint custody, but recommended the switching of physical custody from appellant to appellee. The trial court adopted and approved the commissioner's report, entering an appropriate order on November 23, 1992. This appeal followed.

First, appellant contends that the trial court erred by switching physical custody of the child from appellant to appellee. We agree.

KRS 403.270(4) permits a trial court to "grant joint custody to the child's parents if it is in the best interest of the child." As in situations involving sole custody determinations, the court's decision should be made after an analysis of the factors which are set out in KRS 403.270(1). *Squires v. Squires,* Ky., 854 S.W.2d 765, 769 (1993). Unlike situations involving sole custody determinations, however, any modification of a joint custody decree is not governed by KRS

403.340 and KRS 403.350. Instead, any such nonconsensual modification must be "made anew under KRS 403.270 as if there had been no prior custody determination. As a practical matter, joint custody is no award at all when considering modification of the arrangement." *Benassi v. Havens,* Ky.App., 710 S.W.2d 867, 869 (1986).

Several decisions subsequent to *Benassi* have further examined related joint custody issues. In *Hardin v. Hardin,* Ky.App., 711 S.W.2d 863 (1986), a panel of this court determined that the trial court had erred by awarding joint custody, and directed the court to make a sole custody determination in light of the factors set out in KRS 403.270. The decision was based on the fact that numerous disputes had already developed regarding the children's upbringing, and it appeared "highly unlikely that these parents would be able to agree and cooperate with each other" in regard to major decisions. *Id.* at 865. The court therefore concluded that "[i]t would seem obvious that joint custody cannot be in the best interests of the children where the parents are not sufficiently understanding and mature enough to cooperate in such an arrangement." *Id.* at 865.

Then, in *Erdman v. Clements,* Ky.App., 780 S.W.2d 635, 637 (1989), this court reiterated *Benassi's* holding that if parties to a KRS 403.270 joint custody award subsequently disagree, "a hearing *de novo* should be held to determine custody" in accordance with the child's best interest "as if no prior custody determination had been made." We held that a trial court errs in failing to conduct a KRS 403.270 hearing on a motion to modify joint custody where it appears obvious that the joint custody arrangement is not satisfactory because the parties are unable to cooperate in matters relating to their children.

Next, in *Chalupa v. Chalupa,* Ky.App., 830 S.W.2d 391 (1992), this court reversed and remanded a trial court's award of sole custody, holding that before a trial court may award sole custody to a party, it is required to first consider awarding joint custody. The court noted that:

> In finding a preference for joint custody is in the best interest of the child, even in a

bitter divorce, the court is encouraging the parents to cooperate with each other and to stay on their best behavior. *Joint custody can be modified if a party is acting in bad faith or is uncooperative. The trial court at any time can review joint custody* and if a party is being unreasonable, modify the custody to sole custody in favor of the reasonable parent. Surely, with the stakes so high, there would be more cooperation which leads to the child's best interest, the parents' best interest, fewer court appearances and judicial economy. *Starting out with sole custody would deprive one parent of the vital input and cannot be changed to joint custody unless there was a finding that the child's present environment endangers seriously his physical, mental, moral, or emotional health.* (Emphasis added.)

*Id.* at 393.

Most recently, in *Squires v. Squires,* Ky., 854 S.W.2d 765 (1993), our supreme court for the first time addressed a trial court's exercise of discretion in regard to joint custody. In that case, the trial court acknowledged the hostility between the parties but, after considering its policy favoring joint custody and the child's best interest, awarded joint custody. That decision was affirmed by a divided panel of this court, and the supreme court accepted discretionary review.

In affirming the trial court's decision in *Squires,* the supreme court examined KRS 403.270 and concluded that the statute "manifests the overriding consideration that any custody determination be in the best interest of the child." *Id.* at 768. Although the court declined to endorse *Chalupa's* preference for joint custody, it did hold that neither joint nor sole custody should be preferred over the other, and that parties in every case are "entitled to an individualized determination of whether joint custody or sole custody serves the child's best interest." *Squires, supra* at 770. Moreover, the court held that a cooperative spirit between the parties is not necessarily a condition precedent to an award of joint custody. Instead, trial courts were directed to consider the factors set forth in KRS 403.270(1), and to then assess "the likelihood of future cooperation between the parties." 854 S.W.2d at 765. Such cooperation was defined as a "willingness to rationally participate in decisions affecting the upbringing of the child," even if that willingness is bolstered by the knowledge that the trial court may either utilize its contempt powers or modify custody if there was a bad faith refusal to cooperate. *Id.* at 769. The court also stated that joint custody both may serve the child's best interest, and may encourage parents "to cooperate and stay on their best behavior." *Id.* at 769.

Our review of the authorities summarized above establishes that as a general matter, sole and joint custody should be given equal consideration at the time of an initial custody determination. *Squires, supra.* After considering the factors set out in KRS 403.270(1), the court then should make an individualized determination as to whether the child's best interest would better be served by an award of sole custody or by an award of joint custody. *Squires, supra* at 770. If joint custody is awarded and subsequently becomes unworkable, a nonconsensual modification of the original joint custody decree should be made only after the court conducts a *de novo* hearing pursuant to KRS 403.270 as if there had been no prior custody determination. *See Chalupa, supra; Erdman, supra; Benassi, supra.*

None of the foregoing authorities, however, address the issue presented here. In the instant action the court did not modify the original joint custody decree but, rather, merely made a change in the physical custody of the child pursuant to that decree. Moreover, the record contains no evidence to suggest that the parties were unable to adequately cooperate in regard to their child's welfare prior to appellee's filing of a motion to modify the joint custody decree. Indeed, it is undisputed that the motion was prompted solely because appellant intended to relocate to Florida.

As noted by the trial court, the evidence adduced in support of appellee's motion would have been insufficient to support an order modifying sole custody. *See* KRS 403.340. However, because there was a joint custody decree in place, the court determined

that the motion authorized it to make a *de novo* review of the physical custody issue. We cannot say that the trial court was vested with such authority.

True enough, Kentucky law indicates that a motion to modify a joint custody decree should be approached as if there has been no prior custody determination. *See Erdman, supra; Benassi, supra.* Moreover, a trial court obviously has discretion to determine issues such as where a child will reside. *Squires, supra.* However, unlike the instant action, each of the cases cited above (with the exception of *Benassi*, which involved allegations of neglect and mistreatment) involved a situation in which joint custody was either alleged by one party, or found by the trial court, to be inappropriate because of the parties' unwillingness or inability to cooperate in regard to their children's upbringing. None of those cases, however, hold that a trial court may modify a joint custody award over the objection of one party without first making a finding that there has been an inability or bad faith refusal of one or both parties to cooperate. *See, e.g., Squires, supra* at 769; *Chalupa, supra* at 393.

 As we view the matter, in nonconsensual modification situations involving joint custody, such as the situation here, the trial court may intervene to modify a previous joint custody award only if the court first finds that there has been an inability or bad faith refusal of one or both parties to cooperate. Any court-ordered modification must then be made in light of the best interest of the children and based upon the factors which are enumerated in KRS 403.270. *See Erdman, supra.*

Here, the parties in the instant action did not agree to a modification, and appellee failed to even so much as allege that there was an inability or bad faith refusal of the parties to cooperate. It follows, therefore, that the trial court erred by modifying its joint custody award by changing the physical custody of the child from appellant to appellee. To conclude otherwise would inappropriately encourage joint custodians to continually engage in ongoing disputes regarding physical custody, thereby potentially disrupting established living arrangements at any time without any justification or the use of any judicial safeguards. In our opinion, such a conclusion would also violate the clear statutory preference for stability in custodial arrangements. *See, e.g.,* KRS 403.340. *See also Chalupa, supra* at 393.

Appellant also contends that an excessive amount of time passed between the commissioner's first hearing and his final recommendation to the trial court. *See* KRS 454.350(2). However, we decline to consider this issue since we find no indication in the record that appellant ever raised it below. *See Dubick v. Dubick*, Ky.App., 653 S.W.2d 652 (1983).

The court's judgment is affirmed in part, and reversed and remanded in part for further proceedings consistent with the views expressed in this opinion.

All concur.