Beth Allison STROUD, Appellant,

v.

Irvin Wesley STROUD, Appellee.

No. 1998–CA–001919–MR.

Court of Appeals of Kentucky.

Oct. 29, 1999.

Tiffany Gabeheart Poindexter, Charlotte B. Scott, Paducah, for Appellant.

Emil Samson, Mayfield, for Appellee.

Before: COMBS, HUDDLESTON, and KNOPF, Judges.

## OPINION

COMBS, Judge:

The appellant, Beth Allison Stroud, appeals from an order of the Hickman Circuit Court denying her motion for permission to relocate with the parties' two children and instead awarding physical custody of the children to the appellee, Irvin Wesley Stroud. We reverse.

Upon the dissolution of their marriage on October 5, 1995, Beth and Irvin were awarded joint legal custody of their children, born July 3, 1989, and April 3, 1991, with Beth to have primary physical custody. On April 3, 1997, Irvin filed a motion requesting that he be designated primary physical custodian instead of Beth. Follow-

ing a hearing on May 20, 1997, the court denied the motion, concluding that there were no allegations of a bad faith refusal or inability to cooperate and no proof that Beth had refused to cooperate in matters relating to the parties' children.

On February 12, 1998, Beth filed a motion requesting permission to relocate to Nashville where she had obtained better employment. At the time of the hearing, Beth had secured a position with Vanderbilt University Medical Center. As a registered nurse, Beth was offered a salary of $42,000.00 per year for working three days a week—plus two extra days a month. In addition, by accepting the position, Beth became entitled to other benefits, including: dependent care services, a generous retirement package, additional educational benefits for herself, and college tuition discounts for the parties' children.

Irvin objected to the proposed move and filed a motion again requesting a change in primary physical custody. In this motion, Irvin alleged that Beth had *repeatedly* demonstrated an inability to cooperate in good faith regarding matters related to their children. He complained that Beth failed to communicate to him that she had resigned her former employment, failed to give him notice of her proposal to move to Nashville before her motion was filed, and failed to inform him of the illness of one of the children while in school. At the May 26, 1998, hearing, Irvin also alleged that Beth had changed her telephone number several times without notifying him.[1]

In a final order entered July 15, 1998, the trial court denied appellant's motion to relocate and switched physical custody of the children from Beth to Irvin. Despite the fact that it was not asked to modify the original joint legal custody decree but rather merely to change the physical custodian, the trial court nonetheless determined that the provisions of KRS 403.340 governed its decision. In so doing, the

court determined that Beth's "employment status and stability" were unacceptable.

In *Mennemeyer v. Mennemeyer*, Ky.App., 887 S.W.2d 555 (1994), we held that relocation from Kentucky to Florida by the primary residential custodian was insufficient to trigger a re-examination of a joint custody arrangement. Although the trial court in *Mennemeyer* was aware that relocation alone was insufficient to support an order modifying sole custody, it erroneously determined that it was authorized to make a *de novo* review of the physical custody issue. A trial court cannot "modify a joint custody award over the objection of one party without first making a finding that there has been an inability or bad faith refusal of one or both parties to cooperate." *Id.* at 558.

As in *Mennemeyer*, there has not been a finding in this case of an inability or bad faith refusal of the parties to cooperate. On the contrary, the trial court's order indicates that:

> [t]hese parties do not agree as to a change of the primary custodian of the infant children; however, they *have to some extent cooperated* with the children, as the father was allowed an extensive amount of visitation with the children....

Order at 2. (Emphasis added.) From the timing and sequence of events, it appears that Irvin's motion to change physical custody was prompted exclusively by the proposed move. There is absolutely no evidence to suggest that Beth's proposal to relocate to Nashville was motivated by vindictiveness or whim; rather, it appears to have been made along sound career concerns tailored toward improving the family's standard of living.

If the trial court had an insufficient reason to re-examine the joint custody decree, then it follows equally forcefully

---

1. Intertwined with the other issues was an ongoing dispute regarding the ethnicity of appellant's boyfriend.

that it had no reasonable basis to deny the appellant her request to move the children to Tennessee. Absent an order in the decree or a provision in the agreement of the parties, a custodial parent—whether joint or sole—is not required to seek court approval prior to moving to another location. If one party opposes the move, then the issue becomes whether the joint custody decree can be modified. At this juncture, the court must determine if there is sufficient evidence to find bad faith or an inability to cooperate, weighing the factors set forth in KRS 403.270 and the children's best interests. *Mennemeyer, supra.* In this case, the threshold requirement of *Mennemeyer* was never met.

The order of the Hickman Circuit Court denying appellant's request to relocate the children to Nashville and granting primary physical custody to the appellee is reversed.

ALL CONCUR.