Jessica GOSSETT, Appellant,

v.

Brian Scott KELLEY;  Shannon Leigh
Kelley;  and Kenneth "Chip" G.
Gossett, Appellees.

No. 2011–CA–001536–ME.

Court of Appeals of Kentucky.

March 9, 2012.

Zack N. Womack, Henderson, KY, for
appellant.

Joe A. Evans, III, Madison, KY, for
appellees, Brian Scott Kelley and his wife,
Shannon Leigh Kelley.

No Brief for appellee, Kenneth G.
"Chip" Gossett.

Before ACREE, COMBS and
LAMBERT, Judges.

## OPINION

ACREE, Judge:

On August 8, 2011, the Hopkins Family
Court entered an order naming Shannon
and Brian Kelley *de facto* custodians of the
minor child of Jessica Gossett and Ken-
neth "Chip" Gossett and awarding the Kel-
leys custody.  Although Jessica bases her
appeal on matters of venue and adequacy
of evidence, we are required to vacate the
order because the Hopkins Family Court
lacked subject matter jurisdiction in this
case.

### I. *Facts and procedure*

Jessica and Chip married in March 2008,
and their son Eian was born in July of that
year.  The parties agree that Eian and his
mother spent considerable time in the Kel-
ley home following the child's birth, but
because we will not reach the analyses of
venue or *de facto* custodian status, we need
not recount the parties' respective argu-
ments or evidence on those matters.

Jessica and Chip separated in January 2010, and Jessica instituted divorce proceedings in Christian County, Kentucky, shortly thereafter. On January 19, 2010, the two entered into a separation agreement by which Jessica assumed custody of Eian and Chip enjoyed visitation. The dissolution decree was entered by the Christian Family Court on January 11, 2011, awarding Jessica sole custody pursuant to Kentucky Revised Statutes (KRS) 403.270, and adopting the other provisions of the parties' agreement governing Chip's right of visitation and child support obligation.

A mere ten days later, on January 21, 2011, Jessica's aunt and uncle, Shannon and Brian Kelley, filed a petition for custody of Eian pursuant to KRS 403.270 in the Hopkins Family Court. The Kelleys claimed standing as Eian's *de facto* custodians and asserted Jessica and Chip had waived their superior right to custody of the child. They also made the following representations:

> The Petitioners state that they have not participated in any other litigation concerning the custody of Eian Scott Gossett in this or any other state[,] nor do they have any information concerning any custody proceeding in regard to said child pending in a court of this or any other jurisdiction. The Petitioners certify that they know of no other person not a party to this proceeding who has physical custody of Eian Scott Gossett or claims to have custody or visitation rights pertaining to said child.

No affidavits were attached to the petition. By all appearances, the Kelleys were requesting another initial custody determination from the Hopkins Family Court despite the previous initial award of custody by the Christian Circuit Court.

The existence of the previous order of custody was brought to the family court's attention, however, at various stages of the proceedings in Hopkins County. At the venue hearing on February 21, 2011, Jessica testified that the Kelleys had paid her attorney's fees for the divorce and custody action in Christian County, and Brian Kelley admitted he was aware the decree of dissolution had been entered. At the April 27, 2011 hearing to determine the standing issue, the family court admitted documents from the Christian County proceedings into evidence at the Kelleys' behest. Those documents included the decree of dissolution and the settlement agreement.

Nevertheless, following a rejection of Jessica's venue challenge and a hearing on the Kelleys' status as *de facto* custodians, the family court ruled the Kelleys had standing and awarded them custody of the child pursuant to KRS 403.270. Jessica and Chip were awarded visitation.[1] Jessica appealed the matter to this Court.

## II. *Discussion*

As noted, Jessica has asserted on appeal only that the Hopkins Family Court was the improper venue and that the Kelleys were erroneously granted standing to pursue custody of Eian. Our analysis, however, must begin with a consideration of subject matter jurisdiction. *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 270 (Ky.App.2005) (footnotes omitted) ("It is well-established that the issue of subject matter jurisdiction can be raised at any time, even *sua sponte*, as it cannot be acquired by waiver, consent, or estoppel.").

KRS 403.270 authorized the Christian Family Court to award custody, jointly or

---

1. Chip agreed from the beginning of the action that the Kelleys were Eian's *de facto* custodians and should have custody of him; he has requested only reasonable visitation and has not appealed the order of the Hopkins Family Court.

solely, to *de facto* custodians. KRS 403.270(2), (5), (6). The record shows the Kelleys were aware of the Christian Family Court proceeding and could have sought standing as *de facto* custodians there. KRS 403.270(1). The facts upon which they would have relied in that action are identical to the facts they presented ten days later to the Hopkins Family Court. But they did not participate in that action and sole custody was awarded to Jessica.

Once that final custody decree was entered, *any* subsequent action affecting custody was a modification. *See Pennington v. Marcum*, 266 S.W.3d 759, 765 (Ky.2008) ("[W]hen a final custody decree has been entered ..., any post-decree determination made by the court is a modification, either of custody or timesharing/visitation."). Therefore, the Kelleys were seeking a modification of the final custody decree.

The Kelleys (and the Hopkins Family Court) relied on KRS 403.270 for subject matter jurisdiction. However, only KRS 403.340 provides the court subject matter jurisdiction to modify custody decrees. That statute states, in part:

(2) No motion to modify a custody decree shall be made earlier than two (2) years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe that:

(a) The child's present environment may endanger seriously his physical, mental, moral, or emotional health; or

(b) The custodian appointed under the prior decree has placed the child with a de facto custodian.

KRS 403.340(2); *see also* KRS 403.350.

■ A "circuit court does not acquire subject matter jurisdiction over a motion to modify a prior custody decree unless the motion is accompanied by the requisite affidavit or affidavits." *Petrey v. Cain*, 987 S.W.2d 786, 788 (Ky.1999). In this case, no affidavits were submitted; therefore, the Hopkins Family Court never had subject matter jurisdiction. *Id.; see also Copas v. Copas*, 699 S.W.2d 758, 759 (Ky. App.1985) (two affidavits are required).

■ The requirement of affidavits to establish subject matter jurisdiction is the means by which the legislature intended to maximize the finality of a custody award. *West v. West*, 664 S.W.2d 948, 950 (Ky. App.1984).

The legislature wants stability to come into the lives of those affected by a custody decree, and it has provided for a two-year period of postdecree adjustment for the children. There is a safety valve built into the statute for situations of present environmental endangerment to the child. The endangerment, which must be of a serious nature, must be presented to the trial court by motion "made on the basis of affidavits."

*Copas*, 699 S.W.2d at 759.

Furthermore, despite significant amendment to KRS 403.340 in 2001, "KRS 403.340(3) continues to provide that a party seeking modification must prove that 'a change has occurred in the circumstances of the child or his custodian' and that 'modification is necessary to serve the best interests of the child[.]'" 16 Louise E. Graham & James E. Keller, *Kentucky Practice—Domestic Relations Law* § 21:32 (3d ed.2009). The requisite affidavits creating subject matter jurisdiction require facts supporting such a change in circumstances. Not only were no affidavits presented in this case, but the Hopkins Family Court order makes it clear that the circumstances existing on January 11, 2011, when Jessica was awarded custody, were the identical circumstances existing when the Kelleys filed the petition on January 21, 2011. Subject matter jurisdic-

tion did not, and could not, exist in this case.

### Conclusion

Because the Hopkins Family Court lacked subject matter jurisdiction to modify the final custody decree entered in the Christian Family Court, the order granting the Kelleys *de facto* custodian status and awarding them custody of Eian is vacated.

ALL CONCUR.